AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No. **'24 MJ2970 VET** |
| Black Android Cellular Telephone | ) | |
| 2024250400130701-0002 | ) | |
| ("Subject Device") | ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 846 | Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kevin Thomas, HSI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means).*

Date: _____ August 2, 2024 _____

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Valerie E. Torres, United States Magistrate Judge
*Printed name and title*

1
2

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

3   The following property is to be searched:

4
5   Black Android Cellular Telephone
    Seizure No. 2024250400130701-0002
6   (**"Subject Device"**)

7   The **Subject Device** is currently in the possession of Homeland Security
8   Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California
9   92154.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below.   The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of **May 6, 2024** up to and including **July 2, 2024**:

a.  tending to indicate efforts to import drugs from Mexico into the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of drugs from Mexico into the United States

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other drug, from Mexico into the United States;

d.  tending to identify travel to or presence at locations involved in the importation of drugs from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.  tending to identify the user of, or persons with control over or access to, the **Subject Device**; and/or

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 846, 952 and 960.

**AFFIDAVIT**

I, Special Agent Kevin Thomas, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.      I submit this affidavit in support of an application for a warrant to search the following electronic device:

Black Android Cellular Telephone

Seizure No. 2024250400130701-0002

(**"Subject Device"**)

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 846, 952, and 960 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Juan Angel Patino Soto ("the defendant") for importing approximately 0.495 grams of methamphetamine from Mexico into the United States.  The **Subject Device** is currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2.      The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Subject Device**, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

**BACKGROUND**

3.      I have been employed as a Special Agent with Homeland Security Investigations ("HSI") since December of 2022. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.      During my tenure with HSI, I have participated in the investigation of various drug trafficking organizations ("DTOs") involved in the importation and distribution of drugs into and through the Southern District of California.  Through my training,

experience, and conversations with other law enforcement officers experienced in drug trafficking investigations, I have gained a working knowledge of the operational habits of drug traffickers, in particular those who attempt to import drugs into the United States from Mexico at Ports of Entry.

5.     I am aware that it is common practice for drug traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by drug traffickers is to smuggle drugs into the United States from Mexico by concealing the drugs in vehicles or attached to the bodies of people entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry.  With respect to the importation of drugs in this manner, I am aware that drug traffickers in Mexico frequently communicate with the individual responsible for importing the concealed drugs into the United States.  These communications can occur before, during and after the drugs are imported into the United States.  For example, prior to the importation, drug traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the drug importation.  When the importation is underway, drug traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the drugs, provide instructions and warn accomplices about law enforcement activity.  When the drugs have been imported into the United States, drug traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the drugs to a destination within the United States.

6.     Based upon my training, experience, and consultations with law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone.

Specifically, searches of cellular telephones of individuals involved in the importation of drugs may yield evidence:

    a. tending to indicate efforts to import drugs from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of drugs from Mexico into the United States

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other drug, from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of drugs from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the **Subject Device**; and/or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

### FACTS SUPPORTING PROBABLE CAUSE

7.    On July 2, 2024, Juan Angel Patino Soto ("Patino") entered the United States from Mexico through the San Ysidro Port of Entry pedestrian lanes. Patino was carrying an electric scooter.

8.    A Customs and Border Protection Officer ("CBPO") inspected the electric scooter that Patino was carrying.  The CBPO noticed a gap in the floor of the scooter with a new screw drilled in it. The CBPO referred Patino to secondary for further inspection.

9.    A Human and Narcotic Detection Dog alerted to the battery area underneath the electric scooter.

10.    In secondary, CBPOs inspected the scooter further and discovered eight (8) packages, weighing about 0.495 kilograms, hidden in the battery compartment. A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

//

11.     Patino was arrested and, after waiving his *Miranda* rights, admitted that he was going to be paid $200 USD to smuggle the drugs into the United States. He said he was going to bring the drugs to a 7-11 store on Palomar Street in Chula Vista.

12.     After the defendant was arrested, a CBPO seized all of his property, including the **Subject Device**.  During the interview, HSI SA Kevin Thomas showed Patino the **Subject Device** and Patino confirmed that it was his.

13.     Patino also consented to a search of the **Subject Device**. Pursuant to this consent, agents manually reviewed the **Subject Device** quickly in front of Patino and later downloaded his phone. During the manual review, law enforcement agents found a photograph, time and date stamped from May 6, 2024 at 6:08 p.m., that showed what appeared to be large amounts of drugs (the "May 6 Photo").

14.     Law enforcement agents also found other photos of drugs and messages that appeared to be discussing drugs. The May 6 Photo and the other photos and messages discussing drugs were all sent and/or received using the WhatsApp application. Law enforcement agents were able to see these photos and messages during the manual review, but the download of the phone did not capture the messages or photographs from the WhatsApp application.

15.     Based upon my training and experience, consultation with other law enforcement agents experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Subject Device**. In light of the above facts and my experience and training, there is probable cause to believe that the defendant was using the **Subject Device** to communicate with others to further the importation of drugs into the United States. Further, in my training and experience, drug traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of

the drugs.

16.     Accordingly, I request permission to search the **Subject Device** for data beginning on **May 6, 2024**—the date of the earliest in time photograph of drugs that law enforcement agents observed on the **Subject Device**—up to and including **July 2, 2024**—the date that the defendant crossed into the United States.

## METHODOLOGY

17.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular telephones today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "airplane mode" (or "flight mode"), which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18.     Following the issuance of this warrant, I will collect the **Subject Device** and subject it to analysis. All forensic analysis of the data contained within the cellular

telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19.     Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20.     As described in greater detail above, law enforcement agents have previously attempted to obtain the evidence sought by this warrant by both reviewing the **Subject Device** manually and by downloading data contained on the **Subject Device** shortly after the defendant's arrest. But, as also noted above, certain photographs and messages visible on the WhatsApp application were not downloaded pursuant to the consent download. The purpose of this warrant is to download the previously un-downloaded photographs and messages, including the WhatsApp photographs and messages.

//
//
//
//
//
//
//
//
//
//
//
//
//

## CONCLUSION

21.     Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Subject Device** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 846, 952, and 960. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.


Special Agent Kevin Thomas
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 2nd day of August 2024.


Hon. Valerie E. Torres
United States Magistrate Judge